UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| v. | § | |
| | § | SA-00-CA-0447 FB (NN) |
| KEITH PERRY, | § | |
| | § | |
| Defendant. | § | |

REPORT AND RECOMMENDATION

TO:   Honorable Fred Biery
      United States District Judge

This report and recommendation addresses various pleadings filed by defendant Keith

Perry to overturn a ten-year-old default judgment and avoid the federal government's effort to

collect a civil penalty.  I have jurisdiction to enter this report and recommendation under 28

U.S.C. § 636(b) and the district judge's order of referral.[1]  For the reasons discussed in this

report, I recommend denying Perry's requests.

**Nature of the case**.  In 1997, the Federal Communications Commission (FCC)

determined that defendant Keith Perry was operating an unlicensed radio station from Perry's

home in Leander, Texas.  On June 25, 1997, the FCC sent Perry a letter warning Perry that he

may be subject to a monetary penalty if Perry did not cease operation of the radio station.[2]  Perry

continued to operate the radio station.  On May 13, 1998, the FCC issued an order to show cause

---

[1]Docket entry # 12.

[2]Docket entry # 1, exh. A.

and notice of opportunity for hearing, directing Perry to show cause why the FCC should not

order him to cease and desist from operating the radio station.[3]  The order advised Perry that in

order to avail himself of the opportunity to be heard, Perry should file a written appearance

stating that he would appear at the hearing and present evidence.[4]  The order warned Perry that an

administrative law judge (ALJ) would consider whether the FCC should issue a civil penalty for

operating the unlicensed radio station.  Instead of filing a written appearance or appearing, Perry

sent a letter to FCC's Chief of Compliance and Information Bureau, challenging the FCC's

jurisdiction to regulate his activity.  Perry did not appear at the hearing, in person or otherwise.

At the hearing, the ALJ determined that the letter was not properly before the presiding judge

because it was neither formally nor officially filed.  The ALJ did not consider the letter, stating

the following:  " The Commission's jurisdiction over Perry is clearly set forth in the Show Cause

Order, and no further explanation is necessary as a condition precedent to the filing of a notice of

appearance relative to the scheduled hearing."  Because Perry failed to appear, the ALJ

terminated the hearing and issued a cease-and-desist order, ordering Perry to forfeit to the U.S.

Government $11,000.00 for willful violation of 47 U.S.C. § 301.[5]

     After Perry failed to pay the civil penalty,[6] the government initiated this lawsuit to

recover the civil forfeiture amount.  When the U.S. Marshal attempted to serve Perry with notice

---

[3]*See* 63 Fed. Reg. 26,596 (FCC May 13, 1998) (order to show cause & notice of
opportunity for hearing), *available at* 1998 WL 235880.

[4]*Id*.

[5]Docket entry # 18, exh. A.

[6]Docket entry # 1, exh. C.

of the lawsuit, the government discovered that Perry had moved, leaving no forwarding address.[7]

The government requested and obtained permission to serve Perry by publication.[8]  After Perry

failed to appear,[9] the clerk entered a default judgment.[10]  The judgment ordered that the U.S.

Government recover from Perry $11,000.00 plus post-judgment interest and costs.  Perry filed

the numerous pleadings pending in this case after the government noticed his deposition as part

of an effort to collect the judgment.

  **Pleadings before the court**.  Beginning on February 10, 2010—almost ten years after

entry of the default judgment—Perry filed the following documents:

  (1) Plaintiff's challenge to jurisdiction, petition to review and annul forfeiture, motion to

void and vacate judgment, countercomplaint for damages, and claim for declaratory and

injunctive relief.[11]  In this document, Perry asked the district court to "annul" the FCC's

forfeiture order and the default judgment.  Perry also purported to file counter-claims against the

government.  Because this case has been closed for almost ten years, Perry's attempted counter

claims are appropriately construed as a "request" to file a counter-complaint.  Because the

pleading seeks to overturn the forfeiture order and the default judgment, the portion of the

pleading seeking that relief is appropriately construed as a motion to vacate the default judgment.

  (2) Plaintiff's counter complaint and application for injunctive relief from collections

---

[7]Docket entry # 3, exh. A.

[8]Docket entry #s 3 & 4.

[9]Docket entry # 7.

[10]Docket entry # 9.

[11]Docket entry # 10.

activity.[12]  In this document, Perry asked the district judge to enjoin the government's efforts to

collect on the default judgment.  Although captioned as a counter-complaint, the document

presents no claims.  Because there is no scheduling order permitting Perry to seek affirmative

relief, I directed the clerk to docket the document as "received."

> (3) Amended plaintiff's challenge to jurisdiction, petition to review and annul forfeiture,

motion to void and vacate judgment, countercomplaint for damages, and claim for declaratory

and injunctive relief.[13]  This document appears to be the same document filed with the same

caption as docket entry # 10, but with an amended certificate-of-service date.

> (4) Amended plaintiff's counter complaint and application for injunctive relief from

collections activity.[14]  This document appears to be the same document filed with the same

caption as docket entry # 11, but with an amended certificate-of-service date.  Because there is no

scheduling order permitting Perry to seek affirmative relief, I directed the clerk to docket the

document as "received."

> (5) Defendant's motion to transfer venue and request for ruling on this motion without a

hearing or oral arguments.[15]  In this document, Perry asked the district judge to transfer this case

to the Austin division, because Perry's residence is located "just outside of Austin."[16]  Perry

stated that he does not have transportation to travel to San Antonio.  Although the government

---

[12]Docket entry # 11.

[13]Docket entry # 13.

[14]Docket entry # 14.

[15]Docket entry # 16.

[16]*Id.*, p. 2.

does not oppose a transfer,[17] there is no reason to transfer this case.  This case can be decided without requiring Perry to travel to San Antonio.

(6) Motion to strike plaintiff's response to defendant's challenge to jurisdiction, petition to review and annul forfeiture, motion to void and vacate judgment, counter claim for damages, and declaratory and injunctive relief; and motion to grant relief from collections activity.[18]  In this document, Perry asked the district judge to strike the government's response[19] to his jurisdictional challenge as non-responsive.  The government's response, however, is responsive because it addresses Perry's challenge, provides a concise statement about why the government opposes the annulment/overturning of the forfeiture order and the default judgment, and identifies the specific legal authorities upon which the government relies.

(7) Defendant's answer to plaintiff's response to defendant's motion to transfer venue and request for ruling on this motion without a motion for hearing or oral argument.[20]  In this document, Perry opined that this case requires resolution via a hearing and re-urged his request to transfer the case to the Austin division.  This case can be decided without a hearing—the district court does not need a hearing.

Because Perry's pleadings seek relief from the default judgment, this report and recommendation construes Perry's pleadings as a Rule 60(b) motion to vacate the default judgment.

---

[17]Docket entry # 19.

[18]Docket entry # 21.

[19]Docket entry # 18.

[20]Docket entry # 22.

**Standards applicable to a Rule 60(b) motion**.  A default judgment is a final judgment. A party seeking relief from a final judgment must request relief under Rule 60(b).[21]  The rule provides six reasons why the district court can relieve a party from a final judgment.[22]  One reason is because the judgment is void.[23]  Perry maintains the forfeiture order and the default judgment are void for lack of subject-matter jurisdiction.  "A judgment 'is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a

---

[21]Fed. R. Civ. P. 60(b).

[22]The rule provides as follows:

> Grounds for Relief from a Final Judgment, Order, or Proceeding.
> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the
> following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence,
> could not have been discovered in time to move for a new trial
> under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is
> based on an earlier judgment that has been reversed or vacated; or
> applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

[23]Fed. R. Civ. P. 60(b)(4).

manner inconsistent with due process of law.'"[24]   There is no time limit on attacking a judgment

as void.[25]   Perry does not challenge personal jurisdiction of the district court, nor does he argue

that the district court acted without due process of law.   He challenges only the FCC's subject-

matter jurisdiction.

   **Whether the default judgment is void**.   Perry does not directly address the district

court's jurisdiction to enter the default judgment, but instead, maintains the FCC's forfeiture

order is void because he challenged the FCC's jurisdiction during the FCC proceeding.   Perry

contends the FCC did not address his jurisdictional challenge.   The record does not contain

Perry's challenge, but the FCC discussed the challenge in its show cause order.   The FCC

explained that instead of appearing at the show-cause hearing and formally challenging the

FCC's jurisdiction, Perry sent a letter to the FCC's Chief, Compliance and Information Bureau,

indicating that he would not appear at the hearing.[26]   The FCC stated the basis for its jurisdiction

in its first written communication to Perry.[27]   The FCC repeated the explanation in its order to

show cause and notice of opportunity for hearing.   The FCC also explained why Perry's letter

was not before the commission.[28]   The FCC addressed the basis of its jurisdiction once more in

---

[24]*Williams v. New Orleans Public Serv*., 728 F.2d 730, 735 (5th Cir.  1984) (internal
citation omitted).

[25]*New York Life Ins. Co. v. Brown*, 84 F.3d 137, 142 (5th Cir. 1996).

[26]*See* 63 Fed. Reg. 26,596 (FCC May 13, 1998) (order to show cause & notice of
opportunity for hearing), *available at* 1998 WL 235880.

[27]Docket entry # 1, exh. A.

[28]*See* 63 Fed. Reg. 26,596 (FCC May 13, 1998) (order to show cause & notice of
opportunity for hearing), *available at* 1998 WL 235880.

the cease-and-desist order and forfeiture order.[29]  There is no question the FCC addressed Perry's

challenge.

Likewise, there is no question the FCC had jurisdiction to issue the forfeiture order.

Section 301 of the Communications Act of 1934  (the Act) makes it unlawful to operate a radio

station without a license from the FCC.[30]  Section 503(b) of the Act authorizes the FCC to

impose a civil penalty or a forfeiture for operating a radio station without a license.  The FCC can

proceed against an unlicensed broadcaster by determining the penalty after a hearing, subject to

review in the United States Court of Appeals for the District of Columbia.[31]  If a penalty is not

paid once the forfeiture determination becomes final, the FCC can refer the matter to the

Attorney General for collection.  The Attorney General can then file a lawsuit in the appropriate

district court to seek collection.[32]  That is what occurred here.

The FCC determined the penalty against Perry after a hearing.  After the forfeiture

determination became final, the FCC referred the matter to the U.S. Attorney for collection.  The

U.S. Attorney sought enforcement of the FCC's forfeiture order by filing a complaint pursuant to

47 U.S.C. § 503(b).[33]  That provision gave the district court subject-matter jurisdiction.  The

district court acted pursuant to that jurisdiction.  Because subject-matter jurisdiction existed,

there is no basis for relief from the default judgment.  The motion for relief under Rule 60(b)

---

[29]Docket entry # 1, exh. B; docket entry # 18, exh. A.

[30]47 U.S.C. § 301.

[31]47 U.S.C. §§ 402(a), 503(b)(3)(A).

[32]47 U.S.C. § 503(b)(3)(B).

[33]47 U.S.C. 301.

should be denied.

To the extent Perry complains about the venue, the Act provides that the trial of an offense shall be in the district in which the offense was committed,[34] but no trial was conducted. Perry elected not to appear at the FCC hearing and not to present arguments about why the FCC should not issue a cease-and-desist order. Perry's arguments about venue do not address the relevant issues—whether the district court had subject-matter jurisdiction and whether the default judgment is void.

To the extent that Perry complains about not being served in this lawsuit, the government sought and was granted permission to serve Perry by publication. The government's pleadings discuss a diligent effort to personally serve Perry.[35] Perry argues that he could have been easily located and personally served, and denies having received the U.S. Attorney's March 6, 2000 pre-suit letter. The court notes that the addressee's signature on the "green card" evidencing receipt of the pre-suit letter is strikingly similar to the signature Perry has appended to his recent court filings. Regardless, the Federal Rules of Civil Procedure provide for service when personal service fails. The government and the court complied with the applicable rules.

To the extent Perry seeks to sue the government, his request to file a counter-complaint should be denied. Rule 15(b)[36] governs the amendment of pleadings after trial. The rule permits a party to amend his pleadings to conform to the evidence and to assert claims not raised by

---

[34]47 U.S.C. § 505 ("The trial of any offense under this chapter shall be in the district in which it is committed. . . .").

[35]Docket entry #s 3 & 5.

[36]Fed. R. Civ. P. 15(b).

pleadings when the opposing party either expressly or impliedly consented to trial of issue.[37]

That circumstance does not apply here.  No authority permits Perry to amend his pleadings.

Moreover, because sovereign immunity bars affirmative claims against the government except in

extremely limited circumstances, a countersuit would be futile.

**Recommendations**.  For the reasons discussed above, I recommend that the district

court: (1) DENY the motion to vacate the default judgment (docket entry #s 10 & 13), because

the district court had subject-matter jurisdiction; (2) to the extent Perry seeks to sue the

government, DENY the request to file a counter-complaint, because no authority exists for

amending the pleadings; (3) to the extent Perry seeks relief from the government's collection

effort, DENY Perry's request for injunctive relief, because the order directing the forfeiture was

proper; (4) DENY the motion to transfer the case (docket entry # 16), because no hearing is

necessary and Perry need not travel to San Antonio; and (5) DENY the motion to strike the

government's response (docket entry # 21), because the government responded to Perry's

arguments.

If the Court accepts the above recommendations, the government's recently filed motion

to strike defendant's counterclaim and application for injunctive relief (docket entry # 25) may be

dismissed as moot.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States

District Clerk shall serve a copy of this report and recommendation on all parties by either (1)

---

[37]*Id*. ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.").

electronic transmittal to all parties represented by attorneys registered as a "filing user" with the

clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt

requested.  Written objections to this report and recommendation must be filed within 14 days

after being served with a copy of same, unless this time period is modified by the district court.[38]

Such party shall file the objections with the clerk of the court, and serve the objections on all

other parties and the magistrate judge.  A party filing objections must specifically identify those

findings, conclusions or recommendations to which objections are being made and the basis for

such objections; the district court need not consider frivolous, conclusive or general objections.

A party's failure to file written objections to the proposed findings, conclusions and

recommendations contained in this report shall bar the party from a *de novo* determination by the

district court.[39]  Additionally, failure to file timely written objections to the proposed findings,

conclusions and recommendations contained in this memorandum and recommendation shall bar

the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-

to proposed factual findings and legal conclusions accepted by the district court.[40]

     **SIGNED** on April 19, 2010.

 

 

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[38]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[39]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[40]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).